502 F.2d 1019
 UNITED STATES of America, Plaintiff-Appellee,
v.
William Joseph DAUGHTRY, Defendant-Appellant.
No. 74-1701 Summary Calendar.*
*Rule 18, 5 Cir.; see Isbell Enterprises, Inc.
v.
Citizens Casualty Company of New York et al., 5 Cir., 1970,
431 F.2d 409, Part I.
 United States Court of Appeals, Fifth Circuit.
 Oct. 11, 1974.
 
 Barry R. Nager, Orlando, Fla. (Court-appointed), for defendant-appellant.
 John L. Briggs, U.S. Atty., Jacksonville, Fla., Harrison T. Slaughter, Asst. U.S. Atty., Orlando, Fla., for plaintiff-appellee.
 Before BROWN, Chief Judge, and THORNBERRY and AINSWORTH, Circuit judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 Daughtry appeals from his conviction, following a jury trial, of distributing heroin. While the Government's case is not one of the strongest we have reviewed we have not found any reversible error and, therefore, affirm.
 
 
 2
 Appellant admitted selling a packet of powder to an undercover narcotics officer. His defense is he sold the agents a harmless powder (aspirin and black pepper) as part of an ongoing effort he was involved in to discourage drug 'pushers' from entering the black community. He asserts the small amount of heroin found in the powder[1] was either added by someone with access to the evidence at some point in the chain of custody, or was a result of accidental contamination during the chemical testing process.
 
 
 3
 Appellant argues the powder should not have been admitted into evidence because of the various possibilities for interference with the chain of custody. There are two basic questions involved with every piece of physical evidence admitted in every trial, (i) whether to admit the evidence and (ii) what weight to give that evidence once admitted. The first is the one appellant poses here, and it is a question for the trial judge to decide in exercising control over the conduct of the trial. His discretion is generally broad and will not be disturbed on appeal absent abuse of that discretion. United States v. Brown, 8 Cir., 1973, 482 F.2d 1226.
 
 
 4
 After the vendee-agents field-tested the powder, they placed it in a lock-sealed envelope and locked the envelope in a field locker. Appellant asserts the absence of check-out procedures in connection with that locker coupled with the fact two agents had keys to it (one vendee and one not directly involved with appellant), creates too great a possibility of tampering for the evidence to have been admissible. Similarly, it is asserted the Miami Crime Lab chemist's handling of the evidence over the six day period he had it fatally infected the chain of custody.
 
 
 5
 Appellant has fully failed to show anything but opportunity for the agents in this case to misbehave or malperform. Absent a minimal showing of ill will, bad faith, other evil motivation or some physical evidence of tampering,[2] the District Court properly admitted the evidence notwithstanding the opportunity for unlawful tampering.
 
 
 6
 However, appellant complains of another aspect. He argues the possibility the powder he sold was accidentally contaminated during laboratory testing was too great to permit the District Court to admit the evidence.
 
 
 7
 The Government's chemist testified he had the evidence in and out of his personal locked box several times during the six days he was conducting tests. He could not remember whether he was running other tests at the time. Although appellant makes much of this, it is not the answer to the problem. That answer depends upon what precautions are taken to prevent contamination if other tests are being conducted. Appellant failed to pursue this at trial, and we hold his failure to do so, when coupled with the presumption of regularity, United States v. Brown, supra, entitled the District Court to exercise its discretion in favor of admitting the evidence.
 
 
 8
 Other Circuits have dealt with very similar problems and arrived at like solutions.[3] They recognize the trial Judge's function is an important one, and invest him with broad discretion. Unless persuaded the evidence is too unreliable-- matter which is too likely to induce speculation or to introduce the likelihood of more prejudice than probative weight-- the Judge should permit the jury to consider the evidence for what it is worth. In the total setting of the case, the Judge did not abuse his discretion in allowing the jury to consider it.
 
 
 9
 Appellant objects to the District Judge's comment on the evidence:
 
 
 10
 Now, then, if their (Government officers') testimony is to be believed, then the heroin was in the substance when they made their field test, because heroin-- because aspirin and pepper wouldn't show up purple in a field test. So if there-- if you believe their evidence, then the heroin was in it at that time, and the defendant is not telling the truth about it.
 
 
 11
 Transcript at 211-12.
 
 
 12
 Appellant contends this opinion misstates the facts because a field test would also react positively to caffeine, strychnine and cocaine.
 
 
 13
 Appellant's defense is he sold aspirin and pepper. As far as anything appellant has shown, the District Judge was right in saying neither of those substances would cause a positive field test. In light of appellant's positive defense which fails to explain why the field test was positive, we do not think the comment was a misstatement.
 
 
 14
 Finally, appellant contends the District Judge's castigation[4] of an entirely different panel, but from the same venire, for returning a not-guilty verdict may have affected the deliberations in his case. Both parties rely on United States v. Kyle, 1972, 152 U.S.App.D.C. 141, 469 F.2d 547. The Court was unanimous in holding a judicial comment much like the one here, was reprehensible. A majority was persuaded not to reverse, however, because the appellant was unable to demonstrate prejudice. They reviewed the voir dire examination, in which the panel was asked if any member felt unable to decide the case fairly. No one spoke up. Even though three members of the panels overlapped (a fact not present in our case), and the defense counsel was not aware of the earlier castigation until after the verdict was returned (as here), a majority felt obligated to respect the voir dire silence-assertions and refrain from speculating about possible prejudice.
 
 
 15
 The appellant has not shown any prejudicial harm. There was no effort either to establish or inquire into the question whether any of the jury returning the guilty verdict either heard or could have heard the Judge's remark addressed to the other jury. In the circumstances we also decline to speculate about subjective jury deliberation. Appellant assigns the District Court's failure to pursue this matter as error. We hold it was appellant who was obligated, in the first instance, to demonstrate prejudice-- not the District Court to show no prejudice.
 
 
 16
 We do not in any way condone the District Judge for the 'crime does pay' remarks. But we are convinced appellant had the fair day in Court he is entitled to have-- and we are not persuaded that any of appellant's asserted errors warrants reversal.
 
 
 17
 Affirmed.
 
 
 
 [1]
 Appellant sold 0.37 grams of powder to the agents. Chemical analysis determined the heroin to be 0.7% Of that-- less than 1/10,000th of an ounce
 
 
 [2]
 Not only were none of these factors present, but the positive testimony was that the chemist received the agents' sealed envelope with the seal intact and the envelope free of any evidence of tampering
 
 
 [3]
 But there is no hard and fast rule that the prosecution must exclude all possibility that the article may have been tampered with. See Lestico v. Kuehner, 204 Minn. 125, 283 N.W. 122, 125. In each case the trial judge before he admits it in evidence must be satisfied that in reasonable probability the article has not been changed in important respects. Wigmore, Evidence, 3d Ed., 437(1); 32 C.J.S. Evidence, 607. In reaching his conclusion he must be guided by the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it. Here the samples were taken in the ordinary course of business for the very purpose of being retained as samples; they were put in the usual place where samples were kept to remove them from accident or meddling and there they remained, so far as appear, undisturbed. We think this showing was sufficient to justify admission in evidence of the bottles and their contents and that it was for the jury to decide how likely it was that some other substance had been substituted for what was originally put in the bottles
 United States v. S. B. Penick & Co., 2 Cir., 1943, 136 F.2d 413, 415.
 Appellant argues that the 'chain of custody' must be complete and exclusive and that it was incumbent upon the government to prove that the articles could not have been tampered with during this ten-day period. * * *
 The only other person who knew the combination of the safe was the acting deputy collector of customs. In the absence of any evidence to the contrary, the trial judge was entitled to assume that this official would not tamper with the sack and can or their contents. Where no evidence indicating otherwise is produced, the presumption of regularity supports the official acts of public officers, and courts presumed that they have properly discharged their official duties.
 Gallego v. United States, 9 Cir., 1960, 276 F.2d 914, 916-917.
 Brown contends that the chain of custody of the heroin packages was not adequately established (because) the quantitative and qualitative tests, which consumed approximately one and one-half hours, were conducted over a forty-eight hour period.
 The criteria governing admission of exhibits into evidence is that there must be a showing that the physical exhibit being offered is in substantially the same condition as when the crime was committed. That determination is to be made by the trial judge, not the jury, and may not be overturned except for a clear abuse of discretion. Factors to be considered in making the determination of admissibility include the nature of the article, the circumstances surrounding its preservation and custody, and the likelihood of others tampering with it. If upon the consideration of such factors, the trial judge is satisfied that in reasonable probability the article has not been changed in any important respect, he may permit its introduction in evidence.
 United States v. Brown, 8 Cir., 1973, 482 F.2d 1226, 1228.
 He contends . . . it is 'a bit more than conceivable that tampering with the evidence has occurred.' Such utter speculation cannot be credited on appeal in the face of Government evidence showing a continuous chain of custody. As Stevenson further concedes, the mere fact that it is conceivable that tampering has occurred is not sufficient to require the exclusion of the evidence. The trial court did not abuse its discretion in admitting the narcotics in evidence.
 United States v. Stevenson, 7 Cir., 1971, 445 F.2d 25, 27, cert. denied, 404 U.S. 857, 92 S.Ct. 108, 30 L.Ed.2d 99.
 As a third point appellant is arguing that it was error to admit the packets containing the marijuana in that there was no proper foundation to establish a chain of custody from the defendant to the time of analysis. There is no merit in this contention.
 The circumstances surrounding its custody give no indication of foul play. There is no evidence whatever that anyone either had the opportunity or the inclination to tamper with the packets or their contents. Officer Cox testified that on the night of the sale he either kept the packets in his possession or placed them in the office safe. He testified positively that he did not leave the packets unattended in his car. It, therefore, appears that the packets were in the control of Officer Cox and were not in a position to be tampered with. The record indicates that the packets were carefully sealed and initialed by all who handled them. The testimony of Officer Rich indicates that the packets appeared as they did the night he received them from appellant. Therefore, when viewed in the light of the presumption of regularity which attaches to the handling of evidence within the control of public officials . . . we believe the evidence was properly admitted.
 Appellant seems to be arguing that as long as it was conceivable that the evidence could have been tampered with, it should not have been admitted. This, however, is not the law. The government need not exclude all possibilities of tampering. The Court need only be satisfied that in reasonable probability the article had not been changed in important respects . . .. @
 West v. United States, 8 Cir., 1966, 359 F.2d 50, 55, cert. denied, 385 U.S. 867, 87 S.Ct. 131, 17 L.Ed.2d 94.
 In the light of reason and experience, we find no fallacy or unwisdom in the action of the district court in receiving in evidence the ballots and election paraphpernalia. The jury had possession of all the facts pertaining to the custody and handling of the ballots and paraphernalia before and after the election. If the jurors believed from the evidence that the ballots had been tampered with after being returned to the office of the County Court Clerk, it is safe to assume that no weight would have been attached to them as evidentiary of the guilt of the accused precinct election officials. The ballots were admissible to carry only such weight as the jury chose to give them.
 Ledford v. United States, 6 Cir., 1946, 155 F.2d 574, 576, cert. denied, 329 U.S. 733, 67 S.Ct. 96, 91 L.Ed. 634.
 
 
 [4]
 Very well, members of the jury, it looks like crime pays. That kind of verdict is beyond my understanding. It is up to you on your own verdict
 You will be excused.
 See how easy it is to fool a jury?
 (Thereupon, the trial was concluded.)
 Excerpt of Proceedings, United States v. Brooks, M.D.Fla., February 1, 1974, No. 73-127.