UNITED STATES, Appellee,

v.

Albert M. MADELA, Specialist Four, U.S. Army, Appellant.

No. 36970.
SPCM 13436.

U. S. Court of Military Appeals.

Dec. 14, 1981.

For Appellant: *Colonel Edward S. Adamkewicz, Jr., Major Benjamin A. Sims, Major Grifton E. Carden, Captain Peter A. Nolan* (on brief); *Lieutenant Colonel John F. Lymburner, Captain Dennis E. Brower.*

For Appellee: *Colonel Thomas H. Davis, Colonel R. R. Boller, Major David McNeill, Jr., Captain Landon P. Snell, III* (on brief); *Major Douglas P. Franklin, Captain Paul W. Jacobson.*

Opinion of the Court

EVERETT, Chief Judge:

On May 16, 1978, at Fort Campbell, Kentucky, appellant was tried by a military judge sitting alone as a special court-martial. Contrary to his pleas, he was convicted of possession, sale, and transfer of one bag of marihuana, in violation of Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934. Thereafter, he was sentenced to a bad-conduct discharge, confinement at hard labor for 3 months, forfeiture of $250 pay per month for 3 months, and reduction to the grade of Private E-1. Following

approval of appellant's sentence by the convening authority, the United States Army Court of Military Review affirmed the findings and sentence in an unpublished memorandum opinion. We granted review of this single issue (7 M.J. 34):

> THE PROSECUTION FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE SUBSTANCE ALLEGED IN SPECIFICATIONS 1, 2 AND 3 OF THE CHARGE WAS MARIHUANA, IN THAT (A) THE GOVERNMENT FAILED TO PROVE THAT THE SUBSTANCE ANALYZED AS MARIHUANA WAS THE SUBSTANCE ALLEGEDLY BOUGHT FROM THE APPELLANT, AND (B) THE LABORATORY REPORT IDENTIFYING THE MARIHUANA CONSTITUTED INCOMPETENT HEARSAY.

We now hold that appellant's claim is without merit, so we affirm.[1]

I

The record of trial reveals that on March 8, 1978, Military Policeman Specialist Pulliam, while acting as an undercover investigator for the Fort Campbell Drug Suppression Team (DST), "purchased [from appellant] a plastic bag containing suspected marihuana for ten dollars." This transaction occurred inside appellant's car, which was parked at the Air Base Club at Fort Campbell. After the sale, he returned to the Drug Suppression Team office with the suspected marihuana and "filled out a property receipt for the evidence which [he] obtained from Specialist Madela." Then, "[a]fter marking" the bag, Pulliam "turned it in to Mr. Robinette."

As part of its case in chief the Government also offered in evidence a clear plastic bag of marihuana (prosecution exhibit 1); an "Evidence/Property Custody Document" prepared on DA Form 4137 (prosecution exhibit 2), and a laboratory report (prosecution exhibit 3), concerning a test of "[o]ne plastic bag containing vegetable matter." Pulliam readily identified prosecution exhibit 1 as "the bag I purchased that day." When asked, "How do you know that that is the same bag that you purchased on 8th March?", he replied, "By the time, date and my initials on the bag." He had marked the evidence in this manner when he "returned back to DST office" after purchasing the bag of marihuana. Later, Pulliam identified prosecution exhibit 2 as "the evidence receipt I typed up once returning back to DST office on the evidence I received from Specialist Madela." He could identify this document "[b]y my signature on the received block and turning it over, the evidence to Mr. Robinette." Robinette did not testify at appellant's trial nor did any of the other persons whose names appeared on the evidence receipt which Pulliam had identified.

Testifying in his own defense, appellant denied that he had ever seen Pulliam before and claimed that he was elsewhere at the time of the purported drug transaction. His alibi was corroborated by other witnesses. Also, Sergeant Cooper offered evidence of appellant's good character. In rebuttal, Sergeant Olzak testified that, while conducting a surveillance for the Drug Suppression Team, he observed Pulliam in a car with another individual at the time of the alleged drug transaction. According to this witness, subsequently "Pulliam said that he made a buy and he produced a small bag of what was believed to be marihuana."

Although the defense made no objection to Pulliam's testimony or to any of the physical evidence, appellant now claims that the Government did not prove "that the substance seized [from him] was the same substance which was eventually tested or introduced at trial."[2] He argues that our opinion in *United States v. Nault*, 4 M.J.

1. Since all of our precedents are to the contrary, we need not be detained by the appellant's claim that a laboratory report is inadmissible as evidence because it constitutes "incompetent hearsay." *See United States v. Vietor*, 10 M.J. 69 (1980); *United States v. Strangstal-ien*, 7 M.J. 225 (1979); *United States v. Miller*, 23 U.S.C.M.A. 247, 49 C.M.R. 380 (1974); *United States v. Evans*, 21 U.S.C.M.A. 579, 45 C.M.R. 353 (1972).

2. Appellant's final brief, p. 4.

318, 320 n.7 (1978),[3] prohibits the use of the evidence receipt to establish a chain of custody over the bag of marihuana, and that "[w]ithout that form, there was no evidence of record to demonstrate that the substance in question was properly handled and safeguarded, preserving it in an unaltered state."[4]

## II

As to the identification of physical evidence, we noted in *United States v. Parker*, 10 M.J. 415, 416 (C.M.A.1981), that "[i]f the items were readily identifiable this could be accomplished by direct evidence from an identifying witness at trial." Subsequently, we explained in *United States v. Lewis*, 11 M.J. 188, 193 (C.M.A.1981) (footnote omitted):

> Even the absence of testimony from some of the handlers in the chain of custody in the case at hand does not make the "readily identifiable" heroin packet any less identifiable. While sometimes there may be disagreement as to whether a container is "readily identifiable" or whether the "possibility of tampering" has been adequately excluded, *cf. United States v. Courts*, 9 M.J. 285 (C.M.A.1980), this Court has never disputed the proposition that, if a fungible substance is contained in a "readily identifiable" package and the trial court is satisfied that the contents of that package have not been altered in any significant way, then the package and contents may be received in evidence.

■ In the case at hand, Specialist Pulliam acknowledged that prosecution exhibit 1 was "the same bag" which he had previously marked with his initials, the time and the date. Since that bag contains the markings: "2240/ 8 Mar. 78/JMP," it is "readily identifiable" within the meaning of *Lewis*. There is no suggestion in the record that the contents of the bag were altered or tampered with in any way. Therefore, the bag and its contents were admissible in evidence.

■■ Prosecution exhibit 2, the chain-of-custody receipt which Pulliam testified he had prepared, describes the article received as a "[p]lastic bag containing suspected marihuana, marked for I.D. 2240/ 8 Mar. 78 JMP"—the same markings that appear on prosecution exhibit 1. Also, on this form appears the purported signature of Jay M. Pulliam. The CID Sequence Number at the top of this document is 033–78–0207. On prosecution exhibit 3, which purports to be a laboratory report prepared at the Criminal Investigation Laboratory at Fort Gordon, Georgia, the contributor case number is listed as 033–78–0207—the same number that appears on the chain-of-custody document which Pulliam had prepared. Under these circumstances, the laboratory report was adequately linked to the physical evidence which had been positively identified by Specialist Pulliam. Moreover, in this case, we may properly "presume the regularity of procedure in the handling and storage of the specimens to insure absolute identity between the items received, then analyzed, and this subsequent representation in the written report." *United States v. Strangstalien*, 7 M.J. 225, 229 (C.M.A.1979); *United States v. Nault*, 4 M.J. 318, 320 n.8 (C.M.A.1978).

Having discovered no error in the reception by the military judge of the laboratory report and other prosecution exhibits, we affirm the decision of the United States Army Court of Military Review.

FLETCHER, Judge (concurring):

I agree that prosecution exhibit 1, a bag of marihuana, was properly introduced into evidence in this case as the bag of vegetable matter received by Pulliam from appellant. The testimony of Pulliam clearly established that the materials he received were readily identifiable, that the government's evidence was identified as these materials, and that no suggestion of tampering exist-

---

**3.** *See also United States v. Porter*, 7 M.J. 32 (C.M.A.1979); *United States v. Neutze*, 7 M.J. 30 (C.M.A.1979).

**4.** Appellant's final brief, p. 4.

ed. *See United States v. Parker,* 10 M.J. 415 (C.M.A.1981).

I also agree that prosecution exhibit 3, a laboratory report, was properly introduced as the chemical analysis of the vegetable matter both received from appellant and introduced at trial. The testimony of Pulliam indicated that he filled out and signed an evidence custody receipt for the materials he received from the appellant. This custody receipt is incompetent hearsay. *United States v. Neutze,* 7 M.J. 30 (C.M.A. 1979). However, he also testified by reference to his entries on this custody document that the C.I.D. Sequence Number 033–78–0207 was assigned to these materials. *See* paras. 146a and 149c, Manual for Courts-Martial, United States, 1969 (Revised edition). His testimony describing the materials he received corresponds generally to that described and analyzed in the laboratory report. Moreover, the laboratory report also lists its contributor case number as 033–78–0207. In view of the live testimony of Pulliam and the lack of any controvert-ing evidence from the defense, a proper foundation was established for the admission of this laboratory report. *See United States v. Parker, supra* at 417–18. *Cf. United States v. Courts,* 9 M.J. 285, 293 (C.M.A.1980) (Fletcher, J., dissenting).

COOK, Judge (concurring in the result):

I agree with the principal opinion's disposition of that part of the claim of error that deals with the laboratory report. As to the sufficiency of the evidence to establish the nature of the substance purchased from the accused, for the reasons set out in my separate opinion in *United States v. Nault,* 4 M.J. 318, 320 (C.M.A.1978), I am satisfied the chain-of-custody form established the requisite connection to the laboratory report, which identified the substance as marihuana. I, therefore, join in the determination that the evidence of record supports the trial court's findings of guilt, and in affirmance of the decision of the United States Army Court of Military Review.